Tagged



**ORDERED in the Southern District of Florida on September 18, 2009.**

Paul G. Hyman, Chief Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**Case No. 09-11191-PGH**

**In re**

**MERCEDES HOMES, INC.,** *et al.*

**Debtors.**

**Chapter 11 Cases**
**(Jointly Administered)**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW OVERRULING
OBJECTION OF JEFFREY MACIK TO THE DEBTORS' JOINT PLAN OF
REORGANIZATION (D.E. #1211)**

This matter came before the Court for hearing on August 31, 2009, in West Palm

Beach, Florida (the "Hearing"). The following parties in interest, among others,

appeared at the Hearing: (a) Mercedes Homes, Inc., ("MHI") and certain of its affiliates

(collectively with MHI, the "Debtors"); (b) The Official Committee of Unsecured Creditors

appointed in these Chapter 11 cases (the "Committee"); (c) Bank of America, N.A., as administrative agent for the Debtors' senior secured pre-petition lenders (the "First Lien Lenders"); (d) Real Estate Investment Ventures, LLC ("REIV"); (e) The United States Trustee; (f) Audrey Gillett and Brett Alexander (together, the "Settling ESOP Participants"); and (g) John Macik, Timothy Schooley, Jr., Robert Kalina, Toni Wilcox, Thomas McDonald, Sandra Schooley, and David Barin (collectively, the "Objecting ESOP Participants").

The Hearing concerned, among other things, confirmation of the "*Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code*" (the "Plan") [D.E. #1020], and final approval of the "Disclosure Statement Concerning the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code" (the "Disclosure Statement") [D.E. #1021].

Prior to the Hearing, 30 objections to confirmation of the Plan and/or final approval of the Disclosure Statement were filed by the following parties: (1) Texas Comptroller of Public Accounts [D.E. #1149]; (2) Travis County Tax Assessor, *et al.* [D.E. ##1190, 1193]; (3) Lewisville Independent School District, *et al.* [D.E. #1243, 1266]; (4) Miami-Dade Tax Collector [D.E. #1227]; (5) County of Denton, Texas, *et al.* [D.E. #1216]; (6) Brevard County Tax Collector [D.E. ##1235, 1269]; (7) Orange County Tax Collector [D.E. ##1236, 1270]; (8) Fort Bend Independent School District, *et al.* [D.E. ##1247, 1273]; (9) Dallas County, *et al.* [D.E. ##1250, 1274]; (10) Celebration Pointe Community Development District [D.E. #1261]; (11) Lo Land Assets, LP [D.E. #1224]; (12) Jeffrey Macik [D.E. #1211]; (13) Brett Alexander and Audrey Gillett [D.E. ##1246, 1271]; (14) Park Row Lighting, LLC [D.E. #1169]; (15) Fashion Glass & Mirror,

LLC [D.E. #1170]; (16) Fashion Door & Window, Ltd. [D.E. #1171]; (17) Calvin's Electric, Ltd. [D.E. #1172]; (18) Casa Mechanical Services, Ltd. [D.E. #1173]; (19) Christianson Air Conditioning and Plumbing, LLC [D.E. #1174]; (20) ABC Fence Co. dba Builders Fence Co. [D.E. #1175]; (21) TNT Builders of Florida Enterprises, Inc. [D.E. #1225]; (22) Tri-County Drywall Services, Inc. [D.E. #1252]; (23) Potter Concrete Ltd. [D.E. #1256]; (24) Ace American Insurance Co. [D.E. #1251, 1296]; (25) Norpak Corporation [D.E. #1233, 1268]; (26) Symetra Life Insurance Company [D.E. #1244, 1267]; (27) Bond Safeguard Insurance Company and Lexon Insurance Company [D.E. #1254]; (28) National City Bank [D.E. #1232]; (29) Satellite Beach Partners, LLC [D.E. #1234]; and (30) Adversary Proceeding 09-01927-PGH which was filed by Audrey Gillett against REIV (the "Gillett Adversary Proceeding") [1]    (collectively, the "Confirmation Objections").

At the Hearing, counsel for the Debtors and the objecting parties advised the Court that 29 of the 30 Confirmation Objections had been consensually resolved, and that the only Confirmation Objection remaining was that of the Objecting ESOP Participants (the "Remaining Objection"). The Remaining Objection focuses on whether certain releases of non-Debtors contained in Article 12.4 of the Plan are warranted in these Chapter 11 cases. The following evidence was presented to the Court at the Hearing: (a) the "*Declaration of Richard M. Williamson in Support of Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code*" (the "Williamson Declaration") [D.E. #1306]; (b) the "*Declaration of G. Grant Lyon in Support*

---

[1] Although the Debtors are not named as defendants in the Gillett Adversary Proceeding, the plaintiff has agreed to treat the Gillett Adversary Proceeding complaint as a Plan objection for procedural purposes.

of *Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code*" (the "Lyon Declaration") [D.E. #1307]; (c) the "*Supplemental Declaration of G. Grant Lyon in Support of Class 7 Treatment of Suntree Secured Claims Under Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code*" (the "Supplemental Lyon Declaration") [D.E. #1334]; (d) the "*Ballot Report for Debtors' Joint Plan of Reorganization*" which included the "*Declaration of Voting Agent Regarding Tabulation of Votes in Connection with Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code*" attached as exhibit "1" (the "Ballot Report") [D.E. #1310]; (e) the live testimony of Richard Williamson in support of confirmation of the Plan; (f) the live testimony of Grant Lyon in support of confirmation of the Plan; and (g) the live testimony of Jeffrey Macik in support of his objection to confirmation of the Plan.

The Court takes judicial notice of the following items contained in the record in these Chapter 11 cases: (a) the "*Plan Supplement to the Debtors' Joint Plan of Reorganization*" (the "Plan Supplement") [D.E. #1096]; and (b) the "*Amended Order: (A) Conditionally Approving Disclosure Statement; (B) Authorizing Solicitation of Votes on the Plan (C) Approving Solicitation Procedures; (D) Scheduling Combined Hearing for Final Approval of Disclosure Statement and Evidentiary Hearing on Confirmation of the Plan; (E) Approving Form, Manner and Sufficiency of Notice; and (F) Scheduling the Bar Date to File Claims Under Section 503(b)(9) of the Bankruptcy Code*"  [D.E. #1033].

In making these Findings of Fact and Conclusions of Law the Court has reviewed the following: (a) all of the evidence presented to the Court at the Hearing; (b) the Plan; (c) the Disclosure Statement; (d) the Remaining Objection; (e) the Plan Supplement; (f)

the "*Debtors' Memorandum In Support of Confirmation of Joint Plan of Reorganization*"
[D.E. #1311]; and (g) "*Debtors' Supplemental Brief Regarding Unspecified Shareholder
Derivative Actions by ESOP Participants*" filed on September 4, 2009 [D.E. #1390]
which attached a Transcript of the Hearing as exhibit "A" ("Transcript") . Based upon its
review and consideration of the above, the Court makes the following findings of fact
and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy
Procedure.

## FINDINGS OF FACT

### I.  Jurisdiction and Venue

The Court has jurisdiction over these Chapter 11 cases and the Remaining
Objection pursuant to 28 U.S.C. § 1334. The Plan, the Remaining Objection, and the
responses thereto are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and
(O).  Venue of these Chapter 11 cases and the Remaining Objection in this Court is
proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Court takes judicial notice of the
docket in these Chapter 11 cases, including, without limitation, all pleadings and other
documents filed, all orders entered, and all evidence and arguments made, proffered, or
adduced at, the hearings held before this Court during the pendency of these Chapter
11 cases. All oral findings of fact and conclusions of law entered by the Court at the
Hearing are incorporated herein by this reference, in accordance with Bankruptcy Rule
7052(a).

## II.  **Procedural Background**

The Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, on January 26, 2009 (the "Petition Date").

All impaired classes of claims entitled to vote to accept or reject the Plan have voted to accept the Plan.  The Ballot Report indicates that Class 7 - Suntree Secured Claims voted to reject the Plan; however, subsequent to filing the Ballot Report, the Debtors and Sun Trust Bank, the holder of the Class 7 Suntree Secured Claims reached a resolution regarding treatment of the Class 7 - Suntree Secured Claims.  As part of that resolution, Sun Trust Bank changed its vote to a vote accepting the Plan. Thus, all Classes entitled to vote under the Plan voted to accept the Plan.

The Plan classifies the Objecting ESOP Participants as holding Class 11 equity interests in the Debtors.  Because the Plan provides that holders of interests in Class 11 will not receive or retain any assets or distributions under the Plan, the Class was deemed to have rejected the Plan. The Debtors did not solicit votes from Class 11 members.

## III. **Testimony Presented at the Hearing**

In addition to the Williamson Declaration, Lyon Declaration and Supplemental Lyon Declaration, Richard Williamson, the Chief Restructuring Officer of the Debtors, and G. Grant Lyon, a financial consultant retained by the Debtors, provided live testimony on direct and cross examination at the Hearing.  Jeffrey Macik, one of the Objecting ESOP Participants, also provided live testimony on direct and cross examination at the Hearing to support the Remaining Objection.

### III. Resolution of Settling ESOP Participant Objection

The Settling ESOP Participants filed an Objection to confirmation of the Plan on substantially similar grounds to that of the Objecting ESOP Participants, i.e., that the releases contained in Article 12.4 of the Plan are not warranted. During the Hearing, counsel for the Settling ESOP Participants and the Debtors advised the Court that the parties had consensually resolved the Objection of the Settling ESOP Participants to the release of non-debtor Directors and Officers (the "ESOP Settlement"), by agreeing to include language in an order confirming the Plan ("Clarifying Language") that will make it clear that the ESOP Participants are entitled to pursue claims and causes of action against the MHI ESOP and its fiduciaries. *Transcript* at 42:14-24. The Clarifying Language will permit the ESOP Participants to pursue any claims they may have against the Directors and Officers in their capacity as fiduciaries of the ESOP, but not in their capacity as Directors and Officers of the Debtors. *Transcript* at 43:1-7. It was represented to the Court that the Clarifying Language will preserve claims that the ESOP Participants may have against: the ESOP fiduciaries, the ESOP, other fiduciaries of the ESOP, the ESOP trustees, providers of goods and services to the ESOP, and persons who engaged in prohibited transactions with the ESOP. *Transcript* at 43:24-25; 44:1-16. It was further represented to the Court that the ESOP Settlement will provide a fairly clear path for the ESOP Participants to pursue claims with respect to the ESOP, the fiduciaries of the ESOP, and a claims made insurance policy in the amount of $ 55 million. *Transcript*, 43:8-19. [2]

---

[2] The Court's findings concerning the substance of the Clarifying Language is based upon representations made at the Hearing by Debtor's counsel and counsel for the Settling ESOP participants. However, there is nothing in the record reflecting the exact language agreed to in the ESOP Settlement. Therefore, the Court directs the Debtor

## CONCLUSIONS OF LAW

### A. Legal Issues and Arguments of the Parties

The issue before the Court is whether the non-debtor release contained in Article 12.4 of the Plan with respect to current and former officers and directors (collectively, the "Directors and Officers") of the Debtors should be approved. The relevant release contained in Article 12.4.B of the Plan (the "Release") states:

> Release by Holders of Certain Impaired Claims.  This Plan, and the provisions and distributions set forth herein, is a full and final settlement and compromise of all Claims and causes of action, whether known or unknown, that holders of Claims against and Equity Interests in the Debtors may have against any of the Released Parties pursuant to Sections 1123(b)(3) and (6) of the Bankruptcy Code and Bankruptcy Rule 9019.  As of the date on which all payments required to be made by the Debtors or Reorganized Mercedes on account of the Effective Date Cash Payment and the Post Effective Date Cash Payment have been made, in consideration for the distributions and other treatment afforded under this Plan, the obligations of the Debtors and the Reorganized Debtors under this Plan, the securities, contracts, instruments, releases and other agreements or documents to be delivered in connection with this Plan, and REIV's agreement to waive the REIV Deficiency Claim, each holder of a Claim against or Equity Interest in the Debtors shall be deemed to forever release, waive and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the rights to enforce the Debtors' or the Reorganized Debtors' obligations under this Plan and the securities, contracts, instruments, releases and other agreements and documents delivered thereunder) against the Released Parties, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or

---

to file the exact Clarifying Language of the ESOP Settlement within five days of entry of this Order so as to permit the Objecting ESOP Participants to file a motion to reconsider if the Clarifying Language is any way contrary to the representations made at the Hearing.

prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases or the conduct thereof, or this Plan. Notwithstanding the foregoing, nothing in this Article 12.4, the Plan, or the Confirmation Order shall release any Claim or causes of action for gross negligence or willful misconduct, or any Avoidance Actions or Preserved Litigation Claims.

The Objecting ESOP Participants argue that the Release is not necessary or fair because it deprives them of the right to pursue claims against the Directors and Officers in their individual capacity, and because the Directors and Officers have not provided actual consideration to the estates to warrant such relief.

The Debtors argue that the Release is necessary and fair to implement the Plan because, *inter alia,*: (a) the clarification contained in the ESOP Settlement preserves the rights of the Objecting ESOP Participants to pursue claims against the Directors and Officers in their capacity as trustees or fiduciaries of the ESOP; (b) given that the Plan assumes the Debtors' obligation to indemnify the Directors and Officers, any judgment obtained against the Directors and Officers may result in indirect liability of the Debtors or Reorganized Debtors for discharged claims; (c) any judgment against the Directors and Officers that results in liability for the Reorganized Debtors may result in an event of default under the Reorganized Debtors' loan agreement with the First Lien Lenders; (d) approval of the Release is necessary to facilitate and implement the Plan; and (e) the Directors and Officers have provided substantial consideration in exchange for the Release.

### B. ESOP Participants Cannot Assert Claims Directly Against the Directors & Officers

While the Objecting ESOP Participants did not assert any specific claims against the Directors and Officers prior to the Hearing, the Court understood counsel for the

Objecting ESOP Participants to maintain that his clients have direct claims against the Directors and Officers for breach of fiduciary duty and other unspecified negligent acts, and that such claims could be brought as a shareholder derivative action. *Transcript* at 56-58. As discussed below, the Court concludes that the Objecting ESOP Participants fail to satisfy certain requirements necessary to advance such claims directly against the Directors and Officers in their capacity as directors and officers of the Debtors. The Court further finds that claims against the fiduciaries of the MHI ESOP are retained by the Objecting ESOP Participants.

### 1. ERISA Preempts Objecting ESOP Participants Purported Claims Against Directors & Officers

Although the Objecting ESOP Participants did not assert, at the Hearing or in their Remaining Objection, that they possess claims that would circumvent ERISA preemption, the Court notes that the Employee Retirement Income Security Act ("ERISA") "contains an express preemption provision, which states '[e]xcept as provided in subsection (b)..., the provisions of [ERISA]...shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.'" *Eckelkamp v. Beste*, 315 F.3d 863, 870 (8th Cir. 2002) (*citing* 29 U.S.C. § 1144(a) (ERISA § 514(a))). In *Jones v. LMR Int'l, Inc.*, the Eleventh Circuit noted that "[t]he legislative history suggests that the sweep of ERISA preemption is broad, applying well beyond those subjects covered by ERISA itself." 457 F.3d 1174, 1179 (11th Cir. 2006) (citations omitted). "[S]tate law claims that seek relief available under ERISA are recharacterized as ERISA claims and arise under federal law." *Id.* at 1178 (citations omitted). Because any state law claims the Objecting ESOP Participants might assert

derive from their status as participants in the MHI ESOP,[3] such claims are highly likely to "relate to any employee benefit plan" and be preempted under ERISA.  *See e.g., Eckelkamp v. Beste*, 315 F.3d 863 (determining that plaintiff employees/ESOP members' derivative state law breach of fiduciary duty claims against defendant officers and directors of corporation for allegedly "paying themselves excessive salaries" were preempted by ERISA noting that "Missouri law on derivative actions 'has a connection' to the ESOP, even if it does not 'expressly refer' to employee benefit plans"); *Dist. 65 Ret. Trust for Members of the Bureau of Wholesale Sales Representatives v. Prudential Sec., Inc.*, 925 F. Supp. 1551, 1562 (N.D. Ga. 1996) ("The state common law and statutory claims which arise out of the same underlying facts as the ERISA claims for breach of fiduciary duties of the defendants are preempted."); *Atwood v. Burlington Indus. Equity, Inc.*, 1994 WL 698314 at *17 (M.D.N.C. Aug. 3, 1994) ("the policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. . . .  [t]he court finds, therefore, that ERISA preempts Plaintiffs' cause of action based on state law fiduciary duty in regard to the ESOP's purchase of Burlington stock." (citations omitted)).

    Having determined that the hypothetical claims of the Objecting ESOP Participants, as the Court understands such claims, are preempted by ERISA, the

---

[3] Mr. Macik, on direct examination at the Hearing, described the potential claims as follows:

Q. [Mr. Page] What actions have you had issue with as far as the officers and directors or Mercedes are concerned?

A. [Mr. Macik] Well, the actions – if you look at the total picture, I know that somebody had to stand up as far as making a claim on behalf of the ESOP participants, but I felt that during the whole proceedings, none of the – I never saw any evidence of any of the trustees doing it, because they are one and the same. *Transcript* at 96-97.

Court notes that while the Plan provides for the release of the Debtors' Directors and Officers, the Clarifying Language of the ESOP Settlement will provide that such Directors and Officers are <u>not</u> released in their capacities as ESOP fiduciaries.  The Clarifying Language of the ESOP Settlement will further provide that the ESOP Claimant's claims against the MHI ESOP and/or its fiduciaries are <u>not</u> released under the Plan. The Clarifying Language of the ESOP Settlement will also expressly preserve claims involving breach of fiduciary duty and prohibited transactions against trustees or fiduciaries of the MHI ESOP, or against parties that transacted business with, or engaged in prohibited transactions with, the MHI ESOP. With the exception of such claims against the MHI ESOP or its fiduciaries, any other hypothetical state law claims by the Objecting ESOP Participants would be preempted by the statutory provisions of ERISA.

**2.      *Shareholder Derivative Actions Belong to the Debtors' Estates***

"Actions for breach of fiduciary duty against officers, directors, and shareholders that can be brought either by a shareholder derivatively or by the corporation directly have long been held to become property of the bankruptcy estate once the corporation files a bankruptcy petition."  *In re Hearthside Baking Co.*, 402 B.R. 233, 250 (Bankr. N.D. Ill. 2009); *Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1343 (7th Cir. 1987); *Mitchell Excavators, Inc. v. Mitchell*, 734 F.2d 129, 131 (2d Cir. 1984); *Bayliss v. Rood*, 424 F.2d 142, 146 (4th Cir. 1970).  "The section 541 estate has been found to include any actions that a debtor corporation may have to recover damages for fiduciary misconduct, mismanagement or neglect of duty  . . . ".  *Koch Refining*, 831 F.2d at 1343-1344.  It has also been held that a creditor's committee, with the approval

and supervision of the bankruptcy court, can sue on behalf of the debtor-in-possession if the debtor-in-possession unreasonably fails to bring suit on its claim. *In re Commodore Int'l Ltd.*, 262 F.3d 96, 99 (2d Cir. 2001). As a matter of law, the Objecting ESOP Participants are unable to sue the Directors and Officers on account of any derivative actions because the ability to pursue a derivative action belongs to the Debtors' estates.

However, even if the Objecting ESOP Participants had the right to initiate such an action, under Florida law a shareholder must make a demand on the Debtors' board of directors as a prerequisite for a derivative suit. *Ferola v. Blue Reef Holding Corp.*, 719 So. 2d 389, 390 (Fla. 4th Dist. Ct. App. 1998) (citing Fla. Stat. § 607.07401(2)); *Dutch v. Gordon*, 481 So. 2d 1235, 1235 (Fla. 3d Dist. Ct. App. 1985). Under Florida law, the sole exception to this demand requirement is where such a demand "would be impractical, unreasonable or useless . . ." . *Belcher v. Schilling*, 309 So. 2d 32, 35 (Fla. 3d Dist. Ct. App. 1975). No such demand has been made by the Objecting ESOP Participants. Although the Objecting ESOP Participants maintain that such a demand would be futile, they presented no evidence that such a demand would be impractical, unreasonable, or useless.

In addition, because any derivative action is an asset of the Debtors' estates, any recovery on account of a successful action would be payable to the Debtors' estates, rather than to the Objecting ESOP Participants. *Talcott, Inc. v. McDowell*, 148 So.2d 36, 37 (Fla. 3d Dist. Ct. App. 1962) (In a shareholder derivative action, a shareholder seeks to sustain in his own name a right of action existing in the corporation, however, the corporation is the real party in interest, the stockholder being only a nominal

plaintiff.);  *Belcher v. Schilling*, 309 So. 2d at 34 (affirming denial of motion to dismiss shareholder derivative action where complaint named the corporation as a party-defendant, and each ad damnum clause demanded damages for and on behalf of the use and benefit of the corporation).  Thus, any proceeds obtained from a hypothetical derivative action would be property of the bankruptcy estate subject to distribution pursuant to the absolute priority rule. *See In re Arts Dairy, LLC*, 2009 WL 1758760, at * 3 (Bankr. N.D. Ohio June 19, 2009) ("Bankruptcy law has codified the long-standing and well-established priority scheme whereby secured debts are generally entitled to be paid ahead of unsecured debts, and unsecured debts are entitled to a distribution of a debtor's assets ahead of the holders of equity interests.*").  As discussed below, the total enterprise value of the Debtors is substantially less than the combined value of all secured and unsecured claims against the Debtors' estates. Therefore, even if the Objecting ESOP Participants were permitted to bring a derivative action against the Directors and Officers, it is exceedingly unlikely that any recovery would generate sufficient value to satisfy all creditors' claims in full and enable holders of equity interests, such as the Objecting ESOP Participants,[4] to receive any recovery.

The Objecting ESOP Participants have not articulated any viable basis to support their contention that they possess an independent cause of action against the Directors and Officers. Indeed, even assuming that they could overcome the obstacles to

---

[4] Although the Objecting ESOP Participants maintain that they should be able to pursue a *shareholder* derivative suit against the Directors and Officers, in the Remaining Objection Mr. Macik identifies himself as a creditor holding an unsecured claim related to unpaid ESOP/ERISA benefits. Remaining Objection, ¶¶ 4, 5. The issue of whether Mr. Macik holds an equity interest or an unsecured claim came before the Court for hearing on September 10, 2009, upon Jeffrey Macik and Joni Macik's *Response to Objection to Claim* (D.E.#1386). Contemporaneously herewith, the Court is entering an *Order Sustaining Debtors' Fifth Omnibus Objection to Claims (Equity Interests) as to Claims ##2171 and 2172*, in which the Court finds that Jeffrey Macik and Joni Macik hold equity interests by virtue of their participation in the ESOP. The Court therein denied Jeffrey Macik and Joni Macik's request that their claims be allowed as unsecured creditor's claims.

pursuing a prospective shareholder derivative action, the Objecting ESOP Participants would have no pecuniary interest in the outcome.  A lack of a financial stake may operate to deprive an objecting party of standing to object to plan language.  *In re Johns-Manville Corp.*, 68 B.R. 618, 623-24 (Bankr. S.D.N.Y. 1986); *see also In re Wynwood Cmty. Econ. Dev. Corp., Inc.*, 2009 WL 1107636 at *6 (Bankr. S.D. Fla. Apr. 23, 2009) ("In the bankruptcy context, the movant's burden of demonstrating standing is especially harsh because the movant must demonstrate a direct, adverse effect if the relief sought is not granted." (citing *In re Westwood Cmty.*, 293 F.3d 1332, 1335 (11th Cir. 2002)).

Based upon the foregoing, the Court overrules the Remaining Objection. However as discussed below, the Court notes that despite denial of the relief requested in the Remaining Objection, the ESOP Settlement provides an opportunity for the Objecting ESOP Participants to pursue a recovery.

## C. The Releases are Necessary and Fair under the *Dow Corning* Test

Notwithstanding the foregoing conclusion that the Remaining Objection should be overruled for lack of standing, the Court will nevertheless address the other issues raised in the Remaining Objection. The Remaining Objection asserts that the Plan's Release of the non-debtor Directors and Officers is unwarranted. The Eleventh Circuit has not addressed the propriety of non-debtor releases in a plan of reorganization and the "circuit courts which have addressed the issue are split on whether § 524(e) proscribes non-debtor releases in a Chapter 11 reorganization plan." *In re Winn-Dixie Stores, Inc.*, 356 B.R. 239, 259 (Bankr. M.D. Fla. 2006). Section 524(e) provides that the "discharge of the debt of the debtor does not affect the liability of any other entity on,

or the property of any other entity for, such debt." 11 U.S.C. § 524(e). The Fifth, Ninth, and Tenth Circuits refuse to allow non-debtor releases finding that "§ 524(e) directly conflicts with any interpretation of § 105(a) that would permit" such releases. *In re Transit Group, Inc.*, 286 B.R. 811, 815 (Bankr. M.D. Fla. 2002) (*citing In re Lowenschuss*, 67 F.3d 1394 (9th Cir.1995); *In re Zale Corp.*, 62 F.3d 746 (5th Cir.1995); *In re Western Real Estate Fund, Inc.*, 922 F.2d 592 (10th Cir.1990)). However, this is not the majority view. The Second, Third, Fourth, Sixth, and Seventh Circuits find no conflict between § 105(a) and § 524(e). These courts permit non-debtor releases as part of a restructuring plan pursuant to § 105(a) under certain factual circumstances if the debtor establishes that the releases are necessary or appropriate to carry out the purposes of Chapter 11. *Transit Group*, 286 B.R. at 816 (*citing In re Dow Corning Corp.*, 280 F.3d 648 (6th Cir. 2002); *In re Continental Airlines*, 203 F.3d 203 (3d Cir.2000); *In re Specialty Equip. Co., Inc.*, 3 F.3d 1043 (7th Cir.1993)*; In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2d Cir.1992)*; In re A.H. Robins Co., Inc.*, 880 F.2d 694 (4th Cir.1989)).  These courts note that while the language of § 524(e) explains the effect of a debtor's discharge, it does not "prohibit the release of a non-debtor." *Dow Corning Corp.*, 280 F.3d at 657 (citations omitted).  Nevertheless, "an injunction is a dramatic measure to be used cautiously . . . in 'unusual circumstances'". *Id.* at 658 (citations omitted). "Routine inclusion of non-debtor releases is not appropriate." *Transit* Group, 286 B.R. at 817. This Court agrees with the majority position such that a Chapter 11 plan of reorganization may provide for the release of non-debtors in certain factual circumstances if such releases are necessary and fair.

To determine if non-debtor releases are necessary and fair, courts generally look to the seven-factor test enunciated by the Sixth Circuit in *Dow Corning Corp.*, 280 F.3d 648. *See e.g. In re Friedman's, Inc.*, 356 B.R. 758, 761 (Bankr. S.D. Ga. 2005); *Transit Group, Inc.*, 286 B.R. at 817-18. The seven factors set forth in *Dow Corning* are: (1) whether there is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the debtor; (2) whether the non-debtor has contributed substantial assets to the reorganization; (3) whether the injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor; (4) whether the impacted class, or classes have overwhelmingly voted to accept the plan; (5) whether the plan provides a mechanism to pay for all, or substantially all, of the class, or classes, affected by the injunction; (6) whether the plan provides an opportunity for those claimants who choose not to settle to recover in full; and (7) whether the bankruptcy court made a record of specific factual findings that support its conclusions. *Dow Corning Corp.*, 280 F.3d at 658. As discussed below, the Court finds that the non-debtor releases are appropriate and the *Dow Corning* factors are satisfied.

### 1. *Identity of Interests*

If confirmed, the Plan provides that the "Reorganized Debtors will assume any pre-Petition Date indemnification obligations to any current or former directors and officers employed with the Debtors as of the Effective Date." *Plan*, Art. 7.7.C., at 22. The articles of incorporation of MHI require the Debtors to indemnify officers and

17

directors from <u>any</u> claims or causes of action brought against them.  Amended and Restated Articles of Incorporation of Mercedes Homes, Inc. at 4 ("This Corporation shall indemnify and shall advance expenses on behalf of its Officers and Directors to the fullest extent not prohibited by law either now or hereafter."); *Transcript* at 87:1-10, 91:23-25, 92:1-9.  The Remaining Objection alleges that the Objecting ESOP Participants may have claims against the Directors and Officers for pre-petition conduct of the Directors and Officers in their capacities as Directors and Officers of the Debtors.

To the extent the ESOP participants may have any such claim, the Debtors assert that the indemnification obligations of the Reorganized Debtors set forth above establish an identity of interest between the Reorganized Debtors and the Directors and Officers such that a suit against the Directors and Officers is, in essence, a suit against the Reorganized Debtors.

Based upon the foregoing, and upon the evidence and argument presented at the Hearing, the Court concludes that the reorganized Debtors' indemnification obligations establish an identity of interest between the Debtors and the Directors and Officers such that a suit against the Directors and Officers is, in essence, a suit against the Debtors.  Accordingly, the Court finds and concludes that the first *Dow Corning* factor favors of the Release.

### 2.  *Substantial Contribution to Reorganization*

As of the date of the Hearing, the allowed claims against the Debtors' estates were estimated to be approximately: (a) $130 million owed to the First Lien Lenders; (b) $70 million owed to REIV secured by a junior lien on substantially all of the Debtor's assets; and (c) $50 million owed to holders of general unsecured claims. *Transcript* at

117:15-20. Mr. Lyon testified that the total enterprise value of the Debtors ("Total Enterprise Value") is between $119 million and $131 million, with a midpoint valuation of $124 million. *Lyon Declaration* ¶ 14; *Transcript* at 114:11-16. Mr. Lyon also testified that absent the Plan's resolution of REIV's debt, there would be no value after the first and second lien debt to be distributed to any other creditor. If the high Total Enterprise Value is used, only $1 million in Total Enterprise Value would be left to satisfy the junior secured claims of REIV, resulting in an approximate $69 million general unsecured deficiency claim. Using the midpoint Total Enterprise Value, the amount of REIV's general unsecured deficiency claim would be approximately $70 million, or the entirety of REIV's claims. No party in interest, including the Objecting ESOP Participants, presented any evidence to counter or rebut Mr. Lyon's valuation of the Total Enterprise Value. Therefore, the Court finds and concludes that Mr. Lyon's valuation of the Total Enterprise Value is credible and can be relied upon by this Court.

Under the Plan, REIV's claim is to be bifurcated into a secured claim in the approximate amount of $35 million and an unsecured deficiency claim in the approximate amount of $40 million. *Transcript* at 30:14-21; 67:24-25; 68:1-3. The Plan provides that REIV will receive, on account of its secured claim, all of the equity interests in the Reorganized MHI. *Plan*, Art. 5.5.B, at 18. The Directors and Officers of the Debtors are also the directors, officers, and shareholders of REIV who have the sole authority to release or waive any deficiency claims on behalf of REIV. *Transcript* at 79:12-16. The Directors and Officers have agreed, on behalf of REIV, to waive REIV's $40 million deficiency claim in exchange for the Release and other provisions of the Plan. The waiver of REIV's deficiency claim makes possible a distribution in the amount

of $6 million dollars to unsecured creditors, which is estimated to provide a distribution of approximately 15% to unsecured creditors. *Transcript* at 32:6-9,15-18. REIV's waiver of its deficiency claim significantly reduces the pool of general unsecured claims. Without REIV's waiver, the recovery, if any, to Class 9 General Unsecured Claims would have been substantially diluted. The Committee's support for the Plan was contingent on REIV's waiver of its deficiency claim. *Transcript* at 79:17-23. Thus, REIV's agreement to waive its deficiency claim was a key component in inducing the Committee to agree to accept the Plan. Because Committee support for the Plan was a critical factor to other creditors' support of the Plan, the absence of Committee support would likely result in a liquidation scenario under which there would be no recovery for Class 9 General Unsecured Claims. *See Williamson Declaration*, at 24, 30-31.

It is the Objecting ESOP Participants' position that the Directors and Officers have not contributed any assets to the Plan and have provided no consideration for their release because they provide no new cash to the Plan. The ESOP Participants further argue that waiver of the deficiency claim may justify release of REIV, but it does not justify release of the Directors and Officers individually. However, the Court finds that as the shareholders of REIV, the waiver of REIV's $40 million deficiency claim is a substantial and critical contribution by the Directors and Officers to the reorganization Plan. It permits a distribution in the amount of $6 million to unsecured creditors that could not otherwise be made, and was critical to acceptance of the Plan by the Committee and other creditors.

In addition, the Directors and Officers are very familiar with the Debtors' business, including the properties being managed by the Debtors, the design of

particular home sites, and the lots and subdivisions where the Debtors build homes. *Transcript* at 80:16-23. The Directors and Officers of the Debtors are going to continue to manage and run the reorganized company as the directors and officers of the reorganized company. *Transcript* at 80:12-15; *Compare Plan Supplement*, Exhibit N (identifying those persons to serve as officers and directors of each of the Reorganized Debtors) *with Disclosure Statement*, Schedule I (identifying the officers and directors of each of the Debtors as of the Petition Date). Based on their specialized knowledge and expertise, the Directors and Officers are critical to the Debtors' ability to operate within the business plan that underlies the Plan. *Transcript* at 80:22-23. Furthermore, the Directors and Officers, if not retained by the Reorganized Debtors, could use their special knowledge and expertise to compete against the Debtors.  *Transcript* at 81:6-15.

As to the second Dow Corning factor, the Objecting ESOP Participants also argued that REIV's asserted debt would have been equitably subordinated under § 510(c) because it is "camouflaged equity". However, they introduced no facts or evidence to support this argument.

Based upon the foregoing, and upon the evidence and argument presented at the Hearing, the Court concludes that the Directors and Officers have made substantial contributions to the reorganization in the form of: (a) agreeing to waive REIV's significant unsecured deficiency claim enabling a $6 million distribution to unsecured creditors; and (b) continuing to use their expertise and knowledge to work for the Reorganized Debtors. Accordingly, the Court finds and concludes that the second *Dow Corning* factor favors the Release.

### 3.  *Release Essential to Reorganization*

As indicated above, the Directors and Officers special knowledge and expertise, and their continuing agreement to manage the reorganized company rather than to compete against it, is critical to the successful operation of the reorganized company. As such, the Release to the Directors and Officers is essential to the feasibility of the Debtors' Plan.  *Transcript* at 82:14-17. The Objecting ESOP Participants' argument - that the Release is not essential to the Debtor's reorganization since the funding of the Plan is derived from the operation of the Debtor's business - is without merit in that absent the Release there is no incentive for the Directors and Officers to operate the reorganized company instead of competing against it.

Furthermore, as discussed above, the Release is necessary to ensure that the Debtors and Reorganized Debtors are not liable for claims against the Directors and Officers under indemnification agreements. The New Loan Agreement between the Reorganized Debtors and the First Lien Lenders requires the Debtors to represent that, as of the Effective Date, there is no litigation, other than certain disclosed litigation, or "Material Litigation" pending against any of the Debtors or certain related parties.  *Plan Supplement*, Exhibit J, Section 6.06, at 62. "Material Litigation" is defined to mean any litigation that could reasonably be expected to result in liability for the Reorganized Debtors and its subsidiaries in excess of $100,000 individually or $500,000 in the aggregate.  *Plan Supplement*, Exhibit J, Section 1.01, at 19. An event of default may occur under the New Loan Agreement if any of the representations or warranties made by the Debtors shall have been incorrect or misleading when made.  *Plan Supplement*, Exhibit J, Section 9.01(d) at 98.

Also as discussed above, it is important to recognize that REIV's agreement to waive any unsecured deficiency claim it may have against the Debtors in exchange for the Releases was a key component in inducing the Committee and other creditors to support the Plan.

Based upon the foregoing, and upon the evidence and argument presented at the Hearing, the Court concludes that the Release of the Directors and Officers is essential to the Debtors' reorganization and consummation of the Plan. Accordingly, the Court finds and concludes that the third *Dow Corning* factor favors of the Release.

### 4. Classes Voting to Accept Plan

All impaired classes entitled to vote to accept or reject the Plan have voted to accept the Plan. *See supra* at p.6*;* Ballot Report, at 2-4. The Plan provides that holders of Class 11 interests will not receive or retain any property or interests under the Plan on account of such interests. *Plan*, Art. 5.11.B., at 20. The Objecting ESOP Participants were not entitled to vote to accept or reject the Plan because they were classified as holders of Class 11 equity interests. The Total Enterprise Value is insufficient to pay in full all allowed secured and unsecured claims. *Lyon Declaration* ¶ 46.e; *Transcrip*t at 118:13-18. Accordingly, the absolute priority rule embodied in Bankruptcy Code § 1129(b) prohibits holders of Class 11 interests, like the Objecting ESOP Participants, from receiving any distributions under the Plan.

Based upon the foregoing, and upon the evidence and argument presented at the Hearing, the Court concludes that there is overwhelming support among those creditors entitled to vote for the Plan to be confirmed, and that the only opposition to confirmation of the Plan and the Release comes from a subset of interest holders that

are not entitled to receive or retain any property in the Debtors due to operation of the absolute priority rule.  Accordingly, the Court finds and concludes that the fourth *Dow Corning* factor favors the Release

### 5.  Mechanism to Pay Released Claims

As set forth above, the Court found that the Objecting ESOP Participants lack standing to assert claims against the Directors and Officers in their capacity as directors and officers of the Debtors. *See above,* § B. "ESOP Participants Cannot Assert Claims Directly Against the Directors and Officers" at p. 9. Thus, no claims that the Objecting ESOP Participants could pursue against the Directors and Officers are being released. In addition, the Clarifying Language preserves any claims that the Objecting ESOP Participants may have against the Directors and Officers in their capacity as fiduciaries of the ESOP.

Based upon the foregoing, and upon the evidence and argument presented at the Hearing, the Court concludes that the Objecting ESOP Participants lack standing to bring the type of claims against the Directors and Officers that are the subject of the Release. Therefore, the Court finds and concludes finds and concludes that the fifth *Dow Corning* factor favors the Release.

### 6.  Opportunity for Non-Settling Claimants to Recover

As stated to the Court on the record by counsel for the Debtors and the Settling ESOP Participants, the ESOP Settlement preserves any and all claims and causes of action any ESOP participants, including the Objecting ESOP Participants, may have against any of: (a) the ESOP; (b) current or former trustees of the ESOP; (c) other fiduciaries of the ESOP; (d) persons that provided goods and services to the ESOP; and

(e) persons that engaged in prohibited transactions with the ESOP, provided, however, that the ESOP Settlement does not preserve any claims against the Directors and Officers solely in their capacity as Directors and Officers of the Debtors or Reorganized Debtors.  The Debtors have approximately $55 million in fiduciary liability insurance policies that may cover these types of claims.  *Plan Supplement*, Exhibit J, Schedule 6.09. During his testimony, Mr. Macik was unable to identify any claims or causes of action he believes he may have that would be barred if the Release is approved.

Based upon the foregoing, and upon the evidence and argument presented at the Hearing, the Court concludes that the language of the ESOP Settlement provides a mechanism for all ESOP Participants, including the Objecting ESOP Participants, to pursue claims they may have against those parties identified in the ESOP Settlement, and to potentially recover on such claims if proven.  Accordingly, the Court finds and concludes that the sixth *Dow Corning* factor favors the Release.

### 7.  Specific Findings to Support Releases

As described herein, during the Hearing the Debtors presented substantial evidence, by way of declaration and live testimony, to support confirmation of the Plan and the Release.  The Debtors' witnesses were cross examined by counsel for the Objecting ESOP Participants. Moreover, the Objecting ESOP Participants presented their own witness who provided live testimony in support of the Remaining Objection. The Court has examined all of the evidence produced at the Hearing and in conjunction with the Hearing, and finds and concludes that the witnesses and evidence presented by the Debtors were credible and accorded great weight.  The evidence provided by the Objecting ESOP Participants was insufficient to counter or impeach the evidence

presented by the Debtors regarding the confirmation of the Plan or the necessity and fairness of the Release. Based upon the foregoing, and upon the evidence and argument presented at the Hearing, the Court concludes that there is ample and sufficient evidence in the record to support the Release.  Accordingly, the Court finds and concludes that the seventh *Dow Corning* factor favors of the Release.

## CONCLUSION

As discussed above, the Court finds that the Objecting ESOP Participants are precluded from asserting an independent cause of action against the Directors and Officers. Notwithstanding this incapacity, the Court finds that the Release satisfies the *Dow* Corning factors and is appropriate because it is fair and necessary to the reorganization.

## ORDER

The Court, having taken judicial notice of the record in this case, reviewed the testimony of the witnesses, the applicable law, the arguments of counsel and being otherwise fully advised in the premises hereby **ORDERS AND ADJUDGES** that:

1. the Remaining Objection is **OVERRULED**;

2. the Release contained in Article 12.4.B of the Plan is necessary and fair under  *In re Dow Corning Corp.* and its progeny;

3. the Release is  **APPROVED**; and

4. the Debtor shall file the Clarifying Language concerning the Release that was agreed to in the ESOP Settlement within five days of entry of this Order.

### ###

Tina Talarchyk, Esq.
John Page, Esq.
AUST

Attorney Talarchyk is hereby directed to serve a conformed copy of this Order upon receipt to all interested parties and file a Certificate of Service.